UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLEN GRAY II,

       Petitioner,

                                                Civil Case No. 4:13-cv-14730
v.                                           Honorable Linda V. Parker

LLOYD RAPELJE,

       Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND *LEAVE TO APPEAL IN FORMA PAUPERIS*

      On November 15, 2013, Michigan prisoner Glen Gray II ("Petitioner") filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner challenges his convictions in 2011 following a bench trial in the Circuit Court for Genesee County, Michigan, for felonious assault in violation of Michigan Compiled Laws § 750.82, felon in possession of a firearm in violation of Michigan Compiled Laws § 750.224f, and possession of a firearm during the commission of a felony, second offense, in violation of Michigan Compiled Laws § 750.227b. For the reasons stated below, the Court denies Petitioner habeas relief and declines to issue a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I.  Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  As summarized by the state court:

> Just after midnight on August 23, 2009, Cornisha Doss drove to the home of defendant's friend and picked him up.  Doss and defendant had met approximately a month before and had dated, but apparently had since ended their relationship.  The pair headed to a restaurant. Doss claimed that defendant asked her for a ride. Defendant asserted that Doss contacted him.  Both agreed that Doss expected defendant to purchase her a meal and asked defendant to give her money for gas. Doss drove to a Sunoco gas station on Corunna Road in Flint and pulled up to a pump.  The pair argued about Doss's request for gas money.  Defendant threw money at Doss but then picked it up, refusing to pay for her gas.  Doss claimed that defendant threw a significant amount of money at her and she tried to take $20 for her purchase. Defendant testified that he had only a few singles in his possession.
>
> When defendant refused to pay for her gas, Doss pulled away from the pump and parked near the gas station convenience store. Doss ordered defendant to exit her car.  Defendant had been talking to a friend on his cell phone during this encounter and asked the friend to pick him up.  Defendant told Doss that he would not leave her vehicle until his friend arrived.  The pair continued arguing and defendant told his friend that he needed to end their telephone call because "I'm about to beat this bitch's ass."  Defendant then attempted to take Doss's keys from the ignition.  Doss struck defendant to prevent him from taking her keys.  In response, defendant grabbed Doss by the hair on the back of her head and punched her several times in the face. A small pistol was then produced.  Defendant asserted that Doss took the pistol from her purse and shot twice at him.  Defendant claimed that he tried to wrest the gun away from Doss and she shot him in the

hand in the process. Doss testified, however, that defendant removed the pistol from his waistband and struck her several times on the head and face with it. Doss alleged that she struggled with defendant for the gun and it went off twice.

After the shots were fired, Doss jumped from her car and ran into the gas station. She asked the attendant to call 911 and told him that she had shot defendant. Doss hid in the restroom and personally called 911 as well. Defendant followed Doss into the gas station and also told the attendant that Doss had shot him. The witnesses testified that defendant's hands were not visible on the gas station's surveillance footage, but the attendant asserted that defendant was carrying a pistol, pointing down, in his left hand.

Defendant walked away from the scene and headed toward a nearby hospital. He was stopped along the way. Officers tracked him by following a trail of blood. They found his cell phone thrown behind a privacy fence next to the gas station. The pistol was never recovered.

*People v. Gray,* No. 307763, 2013 WL 1149815, *1-2 (Mich. Ct. App. Feb. 14, 2013).

Petitioner filed a direct appeal in which he raised the following claims:

I.  Defendant was denied a fair trial by testimony from the complaining witness that defendant sells drugs at night to "little dudes" on his block; trial counsel was ineffective for failing to object. US Const Am VI; XIV.

II. Defendant was denied a fair trial because of the failure by the police and prosecutor to adequately investigate this case, preventing defendant from presenting res gestae witnesses and forensic evidence to prove his innocence. US Const Am XIV.

III. The trial court erred in its findings of fact by failing to consider

>   the defense of justification/self-defense to the charges of felony firearm and felonious assault, and the verdict is against the great weight of the evidence.

(*See* ECF No.10-29 at Pg ID 849.) The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions. *Gray*, 2013 WL 1149815. Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which the Court denied. *People v. Gray*, 832 N.W.2d 247 (Mich. 2013).

Petitioner filed the present habeas corpus petition, incorporating the arguments raised in the Michigan Court of Appeals as the grounds for relief. Respondent filed an Answer to the petition on May 21, 2014, contending that Petitioner's first and part of his second claims are procedurally defaulted and that all of his claims lack merit. (ECF No. 9.)

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides for the following standard of review by a federal habeas court:

>   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless it appears that–
>
>   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The United States Supreme Court has elaborated upon the standards set forth in these two clauses.

> With respect to the "contrary to" clause, the Court advised:
>
> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Under the "unreasonable application" clause, habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (citing *Williams*, 529 U.S. at 413). This clause is also triggered when a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context."  *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006).  A state court decision is not "unreasonable" simply because it is "incorrect or erroneous."

5

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "The state court's application must have been 'objectively unreasonable.'" *Id.* (citing *Williams*, 529 U.S. at 409).

As suggested by the above-quoted language, AEDPA's standard of review is "difficult to meet . . . [as it is a] highly deferential standard." *Cullen v. Pinholster*, 563 U.S. – , 131 S. Ct. 1388, 1398 (2011); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'") (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. – , 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (per curiam)). Principles of federalism, comity, and parity between the state and federal court systems animate this deference: as the Supreme Court has explained, "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Indeed, a "readiness to attribute error [to a state court's decision] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24,

123 S.Ct. at 360. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court precedent]." *Harrington*, 131 S.Ct. at 786. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.

### III. Discussion

### A. Ground One

Petitioner first claims that he was denied a fair trial when Doss testified that Petitioner sells drugs to young people on his block and that counsel was ineffective

for failing to object to this testimony.  Respondent contends that Petitioner's claim involving the evidence of his drug activities is procedurally defaulted, because Petitioner failed to object to the introduction of this evidence at trial and the Michigan Court of Appeals relied on this failure, at least in part, in rejecting Petitioner's claim on appeal.  Petitioner, however, contends that his trial counsel was ineffective for failing to object.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice[.]' " *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  However, because the "cause and prejudice" inquiry for the procedural default issue merges with an analysis of the merits of an ineffective assistance of counsel claim, many federal habeas courts find it easier to simply consider the merits of the claim. *See, e.g. Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

Petitioner contends that Doss's references to his illegal drug activities were irrelevant and prejudicial and inadmissible under Rules 401, 402, and 403 of the Michigan Rules of Evidence.  Petitioner further claims that such evidence was

8

admitted for the improper purpose of establishing his propensity to commit the charged offenses, in violation of Michigan Rule of Evidence 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000). State-court evidentiary rulings may be cognizable on habeas review where such rulings resulted in the violation of a defendant's due process rights. However "[g]enerally state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

The Michigan Court of Appeals rejected Petitioner's claim based on the admission of this evidence. Although agreeing with Petitioner that the evidence was "completely irrelevant" and "should not have been admitted", the court concluded that its admission did not affect his substantial rights. *Gray*, 2013 WL

9

1149815, at *3.  The state court reasoned:

> "Defendant was tried before a judge, not a jury. A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v. Jones*, 168 Mich. App 191, 194; 423 NW2d 614 (1988). Absent any evidence to the contrary, a trial court is presumed to have done just that at a bench trial. *People v. Wofford*, 196 Mich.App 275, 282; 492 NW2d 747 (1992).

*Gray*, 2013 WL 1149815, at *3.  The court's adjudication of Petitioner's claim was neither contrary to nor an unreasonable application of Supreme Court precedent. *See Harris v. Rivera,* 454 U.S. 339, 346 (1981) (per curiam) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Joseph,* 781 F. 2d 549, 552 (6th Cir. 1986) (stating that "[i]t is well settled that in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice.").

The trial court issued a written decision in Petitioner's case, which this Court has reviewed.  (ECF No. 10-31.)  There are no references to Petitioner's drug dealing activities.  Instead, the decision reflects that the trial court focused on the relevant evidence to decide what he found to be the salient issue: "whether Doss brought the gun into the car and took it out of her purse during the altercation with Defendant, or whether Defendant brought the gun into the car, pistol-whipped

Doss with it and got shot in the process." (*Id*. at 2.) None of the facts that the trial court relied on to resolve this issue had anything to do with Petitioner's asserted drug dealing. (*Id*. at 2-3.)

As there is no evidence that the trial court considered the evidence of Petitioner's drug activities in reaching its verdict, Petitioner was not prejudiced by the admission of this evidence at his bench trial. For this reason, as the Michigan Court of Appeals concluded, his related ineffective assistance of counsel claim lacks merit. *See Gray*, 2013 WL 1149815, at *4. This is because to establish ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that counsel's deficient performance prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2053, 2064 (1984).

### B. Ground Two

Petitioner next claims that the police and the prosecutor failed to adequately investigate the case against him. Specifically, Petitioner argues that the police should have inspected Doss's car for bullets or bullet holes and that they should have interviewed more witnesses than the gas station clerk. Apparently surveillance video of the gas station store's interior shows two customers present at the time of the incident. (*See* ECF No. 10-29 at Pg ID 859-60.)

The Michigan Court of Appeals rejected this claim, reasoning with respect to

an investigation of Doss's car:

> Defendant maintains that had the police officers who responded to the scene "adequately searched the car for bullets or bullet holes," defendant could have corroborated his claim that Doss shot him intentionally. However, one investigating officer testified that the type of pistol described by the witnesses would not have ejected spent bullet shells and therefore no such evidence could have been found. Moreover, the police did examine Doss's car. An evidence technician took numerous photographs of the blood evidence inside the car and found no bullet holes. One responding officer testified on cross-examination that he had searched the car at the scene and also found no bullet holes.

*Gray,* 2013 WL 1149815, * 4. With respect to the officers' failure to interview the gas station customers, the court wrote:

> In relation to the potential res gestae witnesses, the officers that testified at trial acknowledged that no one spoke to the customers inside the gas station. And defendant complained of this failure during his testimony at trial. However, the prosecutor had no duty to produce these witnesses, only a duty to notify defendant of known witnesses and to provide assistance in locating witnesses when requested. [*People v. Burwick*, 450 Mich. 281, 288-89 (1995)], citing MCL 767.40a. Moreover, defendant clearly and unequivocally waived his right to pursue, investigate, or otherwise use at trial the potential testimony of these witnesses. At a January 26, 2011 pretrial conference, defense counsel noted that he had reviewed the surveillance footage from the gas station and discovered that there were two witnesses of whom he had no prior knowledge. Defense counsel apparently attempted to discover the identities of those individuals. Defense counsel advised defendant that those witnesses could provide testimony that might affect the outcome of the trial. Defendant did not want to wait for defense counsel to investigate the matter further and instead insisted that the matter proceed to trial as scheduled on the following day. The court warned defendant that he

> would be precluded from challenging his convictions based on the absence of those witnesses, but defendant nevertheless decided to proceed to trial.

*Id*. The Michigan Court of Appeals concluded that Petitioner had therefore waived any error related to the absence of these potential witnesses. *Id*. Petitioner is not entitled to habeas relief.

First, contrary to Petitioner's allegation, an officer did look inside Doss's car for bullets or bullet holes and found none. (2/21/11 Trial Tr. at 90.) Further, at a pretrial hearing, Petitioner specifically waived his claim relating to the failure to investigate other witnesses. (1/26/11 Hr'g Tr. at 3-4.) One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. *United States v. Olano*, 507 U.S. 725, 733-34 (1993). In any event, there is no Supreme Court caselaw which required the police or prosecutor to search for or develop the evidence at issue.

The Supreme Court's pronouncements on the duty to preserve evidence have been summarized by the Sixth Circuit Court of Appeals as follows:

> "Under the Due Process Clause, the Supreme Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.' " *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates

> due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. In order for evidence to be "material," it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89, 104 S.Ct. 2528. Thus, the Supreme Court established in *Trombetta* that states have a constitutional duty "to preserve evidence . . . that might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. 2528.
>
> Four years after *Trombetta*, the Supreme Court distinguished material exculpatory evidence from "potentially useful" exculpatory evidence in *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). *Youngblood* established that "the government does not have 'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.' " *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (quoting *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333). "[T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57, 109 S.Ct. 333. In order for a court to hold that the government violated a defendant's due-process rights with regard to potentially useful exculpatory evidence, the defendant must show that the government acted in "bad faith." *Id.* at 58, 109 S.Ct. 333. A showing that the government was negligent, even grossly negligent, is insufficient to establish bad faith. *Wright*, 260 F.3d at 571.

*United States v. Turner*, 287 F. App'x 426, 431-32 (6th Cir. 2008). There is no suggestion that the police acted in bad faith when they failed to further search Doss's car for bullets or bullet holes or when they did not interview the gas station

14

customers. Moreover, this evidence has no exculpatory value. As to evidence of bullets or bullet holes inside Doss's vehicle, there is no dispute that Petitioner was shot inside the vehicle and no reason to conclude that bullet holes found within the car would have provided evidence of Doss's intent when she shot Petitioner. As to the customers inside the gas station store, the incident occurred outside, in Doss's car. Whether customers inside the gas station store subsequently saw Petitioner with the gun when he entered the store's vestibule would not prove or disprove his guilt of the crimes for which he was convicted.

In short, the state court's adjudication of Petitioner's claim that the police failed to properly investigate the crime scene was not contrary to nor an unreasonable application of Supreme Court precedent.

### C.  Ground Three

In his final ground for relief, Petitioner claims that there was insufficient evidence to support the judge's verdict and that the judge erred in rejecting Petitioner's self-defense claim.

The Due Process Clause prohibits a State from convicting "a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 228-29 (2001). Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn

therefrom) in the light most favorable to the prosecution, the court concludes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006). This standard applies to bench trials, as well as to jury trials. *See e.g., United States v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010). It "requires successful challengers to meet a very high threshold . . .." *Apanovitch*, 466 F.3d at 488. The standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In considering a sufficiency of the evidence claim, "circumstantial evidence is entitled to equal weight as direct evidence." *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007).

     Under Michigan law, the elements of assault with a dangerous weapon or felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See Gardner v. Kapture,,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)

(citing *People v. Lawton,* 492 N.W.2d 810 (Mich. Ct. App. 1992)). The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007). The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Id*. There was sufficient evidence for the trial court judge to find Petitioner guilty beyond a reasonable doubt of these crimes and reject his self-defense claim if the court found Doss's trial testimony more credible than Petitioner's testimony. The trial judge in fact found Doss more credible and stated some of the reasons for reaching this conclusion in his written decision. (ECF No. 10-31 at 2-3.) As previously indicated, the assessment of witness credibility is beyond the scope of federal habeas review. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000) (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995)).

Petitioner therefore has not demonstrated his entitlement to habeas relief based on his sufficiency of the evidence claim.

### IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief and therefore is denying his application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before Petitioner may appeal this decision, he must first obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). For the reasons that follow, the Court declines to issue a COA and leave to proceed in forma pauperis on appeal.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing § 2254 Cases.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Even if Doss's testimony concerning Petitioner's alleged drug

activities should not have been admitted, its admission did not rise to the level of a due process violation. Petitioner's claim that the police failed to adequately investigate the crime scene also does not establish a violation of his due process rights. Finally, there was sufficient evidence to support Petitioner's convictions. Accordingly, a COA is not warranted in this case. The Court also is denying Petitioner permission to proceed on appeal in forma pauperis because an appeal would be frivolous. See 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a).

Accordingly,

**IT IS ORDERED**, that Petitioner's application for the writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that the Court declines to issue a Certificate of Appealability and leave to appeal in forma pauperis.

S/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: December 11, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 11, 2014, by electronic and/or U.S. First Class mail.

S/ Richard Loury<br>
Case Manager